# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Greg Bigleman, | ) Civil Action No.: 3:18-cv-00276-JMC |
| Plaintiff, | ) |
| v. | ) |
| | ) **ORDER AND OPINION** |
| Kennametal Inc., | ) |
| Defendant. | ) |

Plaintiff Greg Bigleman filed this action against his former employer, Defendant Kennametal Inc., alleging that he was subjected to retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17, South Carolina Human Affairs Law ("SCHAL"), S.C. Code Ann. §§ 1-13-10 to -110 (2013), and the Civil Rights Act of 1866 ("§ 1981"), 42 U.S.C. § 1981. (ECF No. 8 at 5 ¶ 26–8 ¶ 45.) Plaintiff also alleges a state law claim for breach of contract. (ECF No. 8 at 4 ¶¶ 18–25.)

This matter is before the court on Defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 33.) In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(g) D.S.C., the matter was referred to the United States Magistrate Judge for pretrial handling. On April 12, 2019, the Magistrate Judge issued a Report and Recommendation in which she recommended that the court grants Defendant's Motion in its entirety. (ECF No. 46 at 20.) Plaintiff filed Objections to the Magistrate Judge's Report and Recommendation, which are presently before the court. (ECF No. 49.) For the reasons set forth below, the court **ACCEPTS** the Magistrate Judge's recommendation and **GRANTS** Defendant's Motion for Summary Judgment as to all Plaintiff's claims.

## I. RELEVANT BACKGROUND TO PENDING MOTION

The facts of this matter are discussed in the Report and Recommendation. (*See* ECF No. 46 at 2–9.) The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate and incorporates it by reference. The court will only reference herein additional facts viewed in the light most favorable to Plaintiff that are pertinent to the analysis of his claims.

Defendant "is a global manufacturer of metal removal cutting tools." (ECF No. 33-2 at 18:3–4.) Plaintiff started his employment with Defendant on April 1, 2004, as a production tool operation supervisor at the Akebono site in West Columbia, South Carolina. (ECF No. 38-2 at 9/35:19–21, 36:17–37:11.[1]) In July 2012, Plaintiff was promoted to the position of global operations manager. (*Id.* at 10/40:7-18.) In this position, Plaintiff had "complete PNL[2] responsibility for all cost per part/tool management [for 12 to 14] sites globally" (*Id.* at 11/41:17–42:8.) Therefore, a considerable part of Plaintiff's job was traveling to each of these sites to ensure that "customers were happy" and Defendant's employees "were doing what they were supposed to be doing." (*Id.* at 42:20–24; *see also* 12/45:19–46:16.)

In 2015, Plaintiff began to report to Mike Ramsey, the vice president of the machine tool industry ("MTI") group. (*Id.* at 11/44:19–12/45:14.)

In April of 2016 during a conversation in Latrobe, Pennsylvania with Jason Taft[3] and Dana Jeffries,[4] Plaintiff heard Taft's concern that Ramsey's failure to select Richard Bartel to attend the

---

[1] The court observes that the docket contains condensed transcripts with 4 pages of testimony on each page. Therefore, the number before the slash is the ECF page number and the number after the slash is the transcript page number.
[2] PNL generally means profit and loss.
[3] Jason Taft was a group leader for vending solutions and reported to Plaintiff. (ECF No. 38-2 at 15/60:4–13.)
[4] Dana Jeffries was an administrative assistant and reported to Ramsey. (ECF No. 38-2 at 15/60:14–20.)

international machine tool show ("IMTS") was racially discriminatory.[5] (ECF No. 38-2 at 15/58:7–60:3.) Specifically, Ramsey had selected his recently hired son-in-law instead of Bartel. (*Id.* at 16/62:2–22.) Plaintiff told Taft that his concerns would be investigated by Plaintiff. (*Id.* at 47/1–8.) In approximately May of 2016, Plaintiff took Taft's concerns to Karen George in human resources. (*Id.* at 16/64:9–17/67:2.) George said she would keep things confidential and quietly investigate so as to avoid any "repercussions" with Ramsey. (*Id.* at 17/66:1–10; *see also* 49/193:16–194:14.)

On June 14, 2016, Plaintiff met with Ramsey, Kelly Lynch, and Renee Mayger in Latrobe regarding expense reports that he had submitted for the period of June to November 2015. (*Id.* at 28/110:21–111:20.) The general result of this audit meeting was that there was error in some of Plaintiff's expense reports due to conversion rates used for foreign transactions. (*Id.* at 111:9–112:24.) Ramsey proposed a solution that his assistant would review Plaintiff's expense reports going forward and Plaintiff presumed the issue had been addressed. (*Id.* at 28/112:14–29/114:11.) However, Lynch, the director of internal audit, "decided that at that point we would expand the scope of the review to understand if these issues were in other periods, if there was a broader concern." (ECF No. 38-7 at 22/83:20–23.)

Sometime between July 11, 2016 and July 16, 2016, Plaintiff was at a joint sales meeting of the MTI group in Concord, North Carolina and Ramsey pointed at Plaintiff "and told him in front of the group of employees you need to tell Jason Taft that I will fire anyone who questions my selection of who goes to IMTS because it's my decision." (*Id.* at 20/79:16–80:21.)

On July 22, 2016, Candace Graytok called Plaintiff to communicate that he was suspended.

---

[5] The IMTS is "the second largest manufacturing cutting tool - - all manufacturing show in the world." (ECF No. 38-2 at 14/55:18–23.) The IMTS is a biennial event occurring in Chicago in September. (*Id.* at 54:12–25.)

3

(*Id.* at 29/115:19–116:25.) On July 26, 2016, Graytok and Ramsey called Plaintiff to tell him that he was being terminated for an unspecified cause. (*Id.* at 30/117:3–25.) A disciplinary review committee–comprised of Judith Bacchus, Vice President and Chief Human Resources Officer; Michelle Keating, General Counsel, and Jan Kees van Gaalen, Chief Financial Officer–had made the decision to terminate Plaintiff after receiving internal audit's summary of its audit of Plaintiff's expense reports. (ECF No. 38-1 at 3/8:10–16, 5/15:15–6/20:1.) Ramsey was not involved in the disciplinary review committee's decision-making meeting. (*Id.* at 6/20:2–3.) Defendant officially terminated Plaintiff's employment on July 27, 2016. (ECF No. 38-2 at 12/48:5–8.)

After his termination, Plaintiff alleges that he filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on April 27, 2017. (ECF Nos. 8 at 5 ¶ 27, 38-2 at 45/177:15–23.) In the Charge, Plaintiff alleged that he suffered retaliation "involving an overtly hostile and racially discriminatory environment of which Bigleman had complained." (ECF No. 8 at 5 ¶ 27.) Plaintiff further contends that on October 3, 2017, he received a "right-to-sue" letter from the EEOC in connection with his Charge. (ECF No. 8 at 5 ¶ 27 (referencing ECF No. 33-5 at 89).)

Thereafter, Plaintiff filed an action on December 27, 2017, in the Court of Common Pleas for Lexington County (South Carolina) alleging claims for breach of employment contract, violation of Title VII, race discrimination in violation of § 1981, retaliation, and violation of the South Carolina Payment of Wages Act ("SCPWA"), S.C. Code Ann. §§ 41-10-10 to -110 (Supp. 2011). (ECF No. 1-1 at 5 ¶ 16–10 ¶ 47.) After removing the matter to this court on February 1, 2018 (ECF No. 1), Defendant answered the Complaint on February 1, 2018, denying its allegations. (ECF No. 5.) On February 14, 2018, Plaintiff filed an Amended Complaint (ECF No. 8) asserting claims against Defendant for Title VII retaliation, SCHAL retaliation, § 1981

retaliation, and breach of an employment contract. (ECF No. 8 at 4 ¶ 18–8 ¶ 45.) Defendant answered the Amended Complaint on February 23, 2018, denying its allegations. (ECF No. 8.)

On January 11, 2019, Defendant filed its Motion for Summary Judgment. (ECF No. 33.) Plaintiff filed opposition to the Motion for Summary Judgment on January 25, 2019, to which Defendant filed a Reply in Support of Defendant's Motion for Summary Judgment on February 8, 2019. (ECF Nos. 38, 45.) In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 D.S.C., the Magistrate Judge issued her Report and Recommendation on April 12, 2019, recommending that "the district judge grant Defendant's Motion for Summary Judgment." (ECF No. 46 at 19.) On April 26, 2019, Plaintiff filed Objections to the Magistrate Judge's Report and Recommendation. (ECF No. 49.) On May 9, 2019, Defendant filed a Response to Plaintiff's Objections to the Report and Recommendation (ECF No. 50).

The court considers the merits of Plaintiff's Objections to the Report and Recommendation below.

## II. JURISDICTION

This court has jurisdiction over Plaintiff's claims via 28 U.S.C. § 1331, as they arise under laws of the United States, and also via 42 U.S.C. § 2000e–5(f)(3), which empowers district courts to hear claims "brought under" Title VII. The court also has jurisdiction over this matter pursuant to § 1331 based on Plaintiff's retaliation claim under 42 U.S.C. § 1981, which guarantees the rights of a protected class of individuals "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, . . . ." *Id.* The court may properly hear Plaintiff's state law claims for SCHAL retaliation and breach of employment contract based on supplemental jurisdiction since these claims "are so related to claims in the action within such original jurisdiction that they

5

form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). *See also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (finding supplemental jurisdiction allows parties to append state law claims over which federal courts would otherwise lack jurisdiction to federal claims, so long as "[t]he state and federal claims . . . derive from a common nucleus of operative fact"); *De La Rosa v. Reliable, Inc.*, 113 F. Supp. 3d 1135, 1152 (D.N.M. 2015) ("The court can then exercise supplemental jurisdiction over other claims and parties that 'form part of the same case or controversy under Article III . . . .'" (citing 28 U.S.C. § 1367, U*nited Mine Workers*, 383 U.S. at 725)).

### III. LEGAL STANDARD

A. <u>The Magistrate Judge's Report and Recommendation</u>

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to - including those portions to which only "general and conclusory" objections have been made - for clear error. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

B. <u>Summary Judgment Generally</u>

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. *Newport News Holdings Corp. v. Virtual City Vision*, 650 F.3d 423, 434 (4th Cir. 2011). In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denial of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249.

## IV. ANALYSIS

A. <u>The Report and Recommendation</u>

As to Plaintiff's retaliation claims pursuant to Title VII, the SCHAL, and § 1981, the Magistrate Judge observed that Plaintiff did not submit direct evidence of retaliation because "[t]here is no evidence that Ramsey had any knowledge that Taft believed Ramsey's decision might be racially-discriminatory or that Ramsey knew that Plaintiff had informed George that Taft believed the decision could be racially discriminatory." (ECF No. 46 at 12.) As for indirect evidence of retaliation, the Magistrate Judge concluded that Plaintiff's evidence is insufficient to demonstrate the requisite causal connection because it does not establish that "Ramsey had any

7

knowledge that Plaintiff (or Taft) had suggested that his (Ramsey's) decision might be perceived as racially-discriminatory or (2) that the decision makers had any knowledge of Plaintiff's protected activity." (*Id.* at 13.) Moreover, the Magistrate Judge observes that even if Plaintiff could demonstrate a prima facie case of retaliation, summary judgment should still be granted to Defendant because (1) it "proffered a legitimate, non-retaliatory reason for termination Plaintiff: Internal Audit uncovered many irregularities, misrepresentations, and non-business-related expenses in Plaintiff's submitted expense reports and concluded that he had engaged in intentional financial fraud (*i.e.*, theft from Defendant)"; and (2) Plaintiff has not shown pretext because the evidence of record fails to create "an inference that Ramsey was a decision maker as to Plaintiff's termination."[6] (*Id.* at 14.)

Upon her consideration of Plaintiff's breach of employment contract claim, the Magistrate Judge observed that "Plaintiff [] failed to present evidence sufficient for a reasonable juror to find Defendant terminated Plaintiff [in violation of the Code of Conduct] in retaliation for making a report regarding Ramsey." (*Id.* at 17.) She observed that "[a]ll relevant witnesses testified Ramsey was not a decision maker as to Plaintiff's termination, and no witness disputed this testimony." (*Id.*) She further observed that "there is no evidence that anyone on the Internal Audit or the DRC knew that Plaintiff had made a report about Ramsey." (*Id.* at 17–18.)

B.  The Court's Review

In objecting to the foregoing analysis, Plaintiff generally asserts that the court should reject the Report and Recommendation and deny Defendant's Motion for Summary Judgment for the

---

[6] As an additional basis for granting Defendant summary judgment as to the SCHAL retaliation claim, the Magistrate Judge observed that the claim was not timely filed because "the statute of limitations for Plaintiff's SCHAL's claim was July 27, 2017 [and] Plaintiff's Complaint was not filed until December 27, 2017." (ECF No. 46 at 19 (referencing S.C. Code Ann. § 1-13-90 (2019)).)

8

following reasons:

> The Magistrate errs by departing from the summary judgment standards of review as laid out in *Tolan*, *Reeves*, *Liberty Lobby*, *Jacobs*, and *Roche Carolina, Inc.* by (1) not viewing the whole record as presented by both parties' summary judgment memoranda;[7] (2) not viewing the facts in the nonmovant's light; (3) crediting the movant's interested witnesses' testimony, especially where it is contradicted or impeached; (4) finding its own facts and inferences; (5) not regarding entire portions of Plaintiff's arguments on the causal connection element; (6) weighing the evidence; (7) not considering key evidence offered by the nonmovant; (8) not crediting evidence that contradicts the court's key factual conclusions; (9) finding that there is "no evidence" of a material fact where the record contains evidence allowing a reasonable inference of said fact; (10) not adhering to the well-established distinction between supported, reasonable factual inference and speculation; and (11) crediting Defendant's deposition testimony which a jury is not required to believe.

(ECF No. 49 at 25–26.) The court considers Plaintiff's specific objections relevant to each of his claims below.

### 1. Retaliation under Title VII, SCHAL, and § 1981

Plaintiff alleges that he was retaliated against for engaging in protected activity in violation of Title VII, SCHAL, and § 1981. (ECF No. 8 at 5 ¶ 26–8 ¶ 45.)

#### a. Legal Standard

Title VII protects individuals from retaliation. *See* 42 U.S.C. § 2000e-3(a). More specifically, "Title VII proscribes discrimination against an employee because, in relevant part, []he 'has opposed any practice made an unlawful employment practice by this subchapter, . . . .'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (quoting 42 U.S.C. § 2000e-3(a)). In order to prevail on a claim of retaliation, a plaintiff must either offer sufficient direct and indirect evidence of retaliation, or proceed under a burden-shifting method.

---

[7] The full cites for these cases are as follows: *Tolan v. Cotton*, 572 U.S. 650 (2014); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562 (4th Cir. 2015); and *Anderson v. Roche Carolina, Inc.*, C/A 4:10-cv-2792-RBH-SVH, 2012 WL 368710 (D.S.C. Feb. 3, 2012).

9

Under the burden-shifting method, to demonstrate a prima facie case of retaliation under Title VII, a plaintiff must show (1) that he engaged in protected activity[8]; (2) that his employer took an adverse employment action against him; and (3) that a causal connection existed between the protected activity and the asserted adverse action. *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 242 (4th Cir. 1997); *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001). "A prima facie retaliation claim under 42 U.S.C. § 1981 [and the SCHAL] has the same elements." *Boyer-Liberto*, 786 F.3d at 282 (citing *Honor v. Booz–Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004)); *Johnson v. Carolina Culinary Foods LP*, C/A No. 3:05-1947-MBS-BM, 2007 WL 9735076, at *8 (observing that the "retaliation claims Plaintiff is asserting under the South Carolina Human Affairs Law . . . are judged and considered by the same standards as Plaintiff's federal Title VII claims" (citing *Moore v. Greenwood School District No. 52*, 195 F. App'x 140, 143 (4th Cir. Aug. 18, 2006) ("[T]he same standard for evaluating claims under State Human Affairs Law is used for evaluating claims under federal anti-discrimination laws."))).

If the plaintiff establishes a prima facie case of retaliation, the defendant can rebut the presumption of retaliation by articulating a non-discriminatory reason for its action. *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 271 (4th Cir. 2001) (citation omitted). At that point, the plaintiff has the opportunity to prove that the employer's legitimate, non-discriminatory reason is pretextual. *Id.*

### b. Plaintiff's Objection

Plaintiff objects to the Report and Recommendation arguing that "[t]he Magistrate [Judge] does not follow binding precedent on how to analyze direct evidence, does not view the whole

---

[8] "In the context of element one of a retaliation claim, an employee is protected when she opposes 'not only . . . employment actions actually unlawful under Title VII but also employment actions [she] reasonably believes to be unlawful.'" *Boyer-Liberto*, 786 F.3d at 282 (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005)).

record, does not view the facts in the nonmovant's light, and errantly weighs the movant's evidence over that of the nonmovant." (ECF No. 49 at 9.) In support of this argument, Plaintiff asserts that he submitted direct evidence of Ramsey's discriminatory animus based on (1) his statement that "I will fire anyone who questions my selection of who goes to IMTS" and (2) his knowledge of Taft's concerns conveyed by both Plaintiff and Jefferies. (*Id.* at 10, 13.) Plaintiff further asserts that the Magistrate Judge discounted this evidence by impermissibly violating the jury's province in "finding that this outburst was directed to Taft and not to Plaintiff" and concluding that Ramsey did not have "knowledge of the racially discriminatory nature of Plaintiff's complaint prior to terminating him." (*Id.* at 10, 13.)

Plaintiff also argues that the Magistrate Judge erred in her application of the burden-shifting method in that she "again does not view the whole record, does not consider Plaintiff's copious citations thereto, and instead views facts in the movant's favor, again in violation of *Tolan*, *Jacobs*, and *Roche Carolina, Inc.*" He asserts that the Magistrate Judge completely ignores the following evidence that clearly demonstrates Ramsey's role in his termination:

> (1) the outburst itself: []"You need to tell Jason Taft that I will fire anyone who questions my selection of who goes to IMTS because it's my decision"; (2) Ramsey has fired people in his supervisory positions at Kennametal, such has been part of his job for the past 25 years, and he was Plaintiff's only supervisor; (3) Plaintiff and George acknowledged with a laugh, during Plaintiff's complaint to her, that if they didn't keep it quiet from Ramsey, there would be "repercussions" or "wrath" from Ramsey; (4) after the June 2016 meeting between I[nternal] A[udit], Ramsey, and Plaintiff, IA gave Ramsey a report on Plaintiff's audit issues; and (5) that the decision to suspend Plaintiff mere days before his termination was made in a meeting at which Ramsey was present, and Graytok discussed in deposition how the decision had been hers and Ramsey's.

(ECF No. 49 at 14–15 (emphasis in the original).) Moreover, he asserts that the Magistrate Judge failed to consider his evidence of pretext:

> Defendant had a policy holding Ramsey accountable for inferiors' expense reports' accuracy; Ramsey acknowledged the policy applied to him; Ramsey announced to his whole team when he assumed his position that he wasn't going to review

11

expense reports anymore; Ramsey violated it by failing to review Plaintiff's expense reports that led to the audit, only reviewing them after the June 2016 meeting with Plaintiff and IA; and Defendant failed to consider Ramsey's violations of this policy, instead finding that Plaintiff had defrauded it.

(*Id.* at 19.)

### c. Discussion

Upon its review, the court agrees with the Magistrate Judge that Plaintiff cannot demonstrate a prima facie case of retaliation because there is a lack of a causal link between Plaintiff's protected activity of complaining and the alleged retaliatory termination he suffered. "[A] causal connection for purposes of demonstrating a prima facie case [of retaliation] exists where the employer takes adverse employment action against an employee shortly after <u>learning</u> of the protected activity." *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (quoting *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)) (emphasis added). "'Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case.'" *Wright v. Sw. Airlines*, 319 F. App'x 232, 234 (4th Cir. 2009) (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)).

Although Plaintiff adamantly contends that Ramsey terminated his employment, the court finds that the uncontroverted evidence of record establishes that the members of Defendant's disciplinary review committee ultimately decided to terminate Plaintiff. The court is further unable to impute either direct or circumstantial knowledge of Plaintiff's complaint to George to the disciplinary review committee at the time the decision was made to terminate Plaintiff. Because Plaintiff cannot allege facts sufficient to create an inference that the individuals responsible for his termination had knowledge of his protected activity, he is unable to satisfy the

causality element of a prima facie retaliation claim. *See Wright*, 319 F. App'x at 234 ("Although it appears accurate that certain airline officials were aware of [Plaintiff-Appellant] Wright's FMLA request, she utterly fails to demonstrate that the particular supervisors involved in her termination possessed such knowledge . . . . As Wright failed to allege facts sufficient to prove that the supervisors responsible for her termination had knowledge of her FMLA request, she was unable to establish a prima facie retaliation claim, . . . .").

As a result of the foregoing, the court finds that Defendant is entitled to summary judgment on Plaintiff's claims for retaliation. Accordingly, the court overrules Plaintiff's objections.

### 2. Breach of Employment Contract

Plaintiff alleges that Defendant's actions toward him breached both binding contractual provisions of its employment manual and the covenant of good faith and fair dealing. (ECF No. 8 at 4 ¶ 18–5 ¶ 25.)

#### a. Legal Standard

With respect to employment, there is a presumption in South Carolina that employees are at-will. *Prescott v. Farmer's Tel. Co–Op., Inc.*, 516 S.E.2d 923, 927 n.8 (S.C. 1999) (In South Carolina, "there is a presumption of at-will employment"). In order to prevail on a breach of contract claim under South Carolina law, a plaintiff bears the burden of establishing the existence and terms of the contract, defendant's breach of one or more of the contractual terms, and damages resulting from the breach. *Taylor v. Cummins Atl., Inc.*, 852 F. Supp. 1279, 1286 (D.S.C. 1994) (citing *Fuller v. E. Fire & Cas. Ins. Co.*, 124 S.E.2d 602, 610 (S.C. 1962)). In an action asserting breach of contract based on a handbook or other statement of company policy, once an employer voluntarily publishes the handbook or policy to its employees, the employer may be held liable for breach of contract if the employee can establish that the handbook, policy, or other similar material

applies to the employee, sets out procedures binding on the employer, and does not contain a conspicuous and appropriate disclaimer. *Grant v. Mount Vernon Mills, Inc.*, 634 S.E.2d 15, 20 (S.C. Ct. App. 2006). Therefore, for Plaintiff to survive Defendant's Motion for Summary Judgment, the evidence before the court must be sufficient to create a genuine issue of fact that a contract for employment was created in this case.

### b. Plaintiff's Objection

In his Objections, Plaintiff argues that the Magistrate Judge erred by analyzing his claim for breach of contract using "Title VII's framework rather than [the framework for] South Carolina's common law for breach-of-contract claims." (ECF No. 49 at 24.) In this regard, Plaintiff asserts that "[u]nder this common-law standard for breaches, Plaintiff's copious record-citations allow a reasonable jury to conclude that the preponderance of the evidence shows that Defendant breached the contract by retaliating against Plaintiff for his complaints of nepotism." (*Id.*) Additionally, in response to the Magistrate Judge's statute of limitations observation, Plaintiff responds that "the doctrine of preemption should apply to bar the interpretation of the SCHAL Defendant espouses, and preemption analysis greatly differs from that of equitable tolling such that the latter is no substitute for the former." (*Id.* at 25.)

### c. Discussion

In the Report, the Magistrate Judge observed that Plaintiff's breach of contract claim failed because "[a]ssuming arguendo that the Code of Conduct were to constitute a contract under South Carolina law, Plaintiff has failed to present evidence sufficient for a reasonable juror to find Defendant terminated Plaintiff in retaliation for making a report regarding Ramsey." (ECF No. 46 at 17.) Upon its consideration of this observation, the court finds that the statement evidences the Magistrate Judge's conclusion that Defendant did not breach the Code of Conduct as alleged by

Plaintiff. Because the breach of a contractual term is an element of a claim for breach of contract, the court finds that it is unable to agree with Plaintiff that the Magistrate Judge used a Title VII framework to analyze the breach of contract claim.[9] As a result, the court finds that Plaintiff's objection is without merit and should be overruled.

## V.  CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** the Motion for Summary Judgment of Defendant Kennametal Inc. as to all Plaintiff's claims. (ECF No. 33.) The court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 46) and incorporates it herein by reference.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

September 30, 2019
Columbia, South Carolina

---

[9] Additionally, the court observes that "the implied covenant of good faith and fair dealing is not an independent cause of action separate from the claim for breach of contract." *Floyd v. Mgmt. Analysis & Utilization, Inc.*, C/A No. 7:13-01971-JMC, 2014 WL 971937, at *4 (D.S.C. Mar. 12, 2014) (citing *RoTec Servs., Inc. v. Encompass Servs., Inc.*, 597 S.E.2d 881, 884 (S.C. 2004)).